UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
NARENDRA JODHAN,                      :
                                     :    07 Civ. 9263 (RMB) (JCF)
              Petitioner,             :
                                     :         REPORT AND
         - against -                 :       RECOMMENDATION
                                     :
ROBERT E. ERCOLE, Superintendent,    :
Green Haven Correctional Facility,   :
                                     :
              Respondent.            :
- - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE RICHARD M. BERMAN, U.S.D.J.:

        Narendra Jodhan, proceeding pro se, brings this petition for

a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging

his conviction in New York State Supreme Court, Bronx County, for

rape, sodomy, and assault.  Mr. Jodhan challenges his conviction on

the grounds that: (1) the prosecutor engaged in a pattern of

misconduct during cross-examination and on summation; and (2) the

trial court gave an excessively coercive charge to the jury when it

became deadlocked.  For the reasons set forth below, I recommend

that the petition be denied.

Background

        A.    The Trial

        In April and May of 2003, Narendra Jodhan was tried on charges

of rape and sodomy in the first degree, assault in the second

degree, and kidnapping in the first and second degrees.[1]  Justice

_____

        [1] Mr. Jodhan was also indicted for criminal possession of a
weapon in the fourth degree, two counts of burglary in the first
degree, and sexual abuse in the first degree; however, these

1

John Barone presided over the trial. The prosecution accused Mr. Jodhan of committing each of these offenses against his ex-girlfriend, N.S.[2]

At trial, N.S. testified that she and Mr. Jodhan began dating around February 2002. (Tr. at 182).[3] She had known Mr. Jodhan from the time they grew up together in her native country of Guyana. (Tr. at 181, 781-82). Their relationship lasted until early September of the same year, when N.S. broke it off because Mr. Jodhan "was becoming very violent." (Tr. at 185). When N.S. told Mr. Jodhan she wanted to end the relationship, Mr. Jodhan became very upset and threatened to kill her and kill himself. (Tr. at 189).

One week later, on September 19, 2002, Mr. Jodhan showed up at the home of N.S.'s aunt and uncle in the Bronx, where N.S. was staying. He came inside[4] and began to beat N.S. and say that he was going to kill her. (Tr. at 192-93). He then dragged her into a bedroom by her hair and removed her clothes while threatening her

_____

charges were not submitted to the jury.

[2] Although the victim's name appears in the record, the respondent has requested that she be referred to by her initials pursuant to New York Civil Rights Law § 50-b(1).

[3] "Tr." refers to the transcript of the petitioner's trial.

[4] At one point, N.S. had given Mr. Jodhan a key to the house because Mr. Jodhan would occasionally spend the night there. However, N.S. testified that when he refused to return the key after they broke up, she asked her uncle to change the lock. (Tr. at 189-90).

with a screwdriver.  (Tr. at 194).  There, N.S. testified, Mr. Jodhan raped her and sodomized her.  (Tr. at 194-96).  After that, he brought her downstairs and forced her to take a shower.  (Tr. at 196-97).  He told her he was going to "take her away," but she responded that she did not want to go.  (Tr. at 197).

N.S. testified that Mr. Jodhan then brought her to the kitchen and held her by her hair while she answered a telephone call.  (Tr. at 198-200).  Angered that she wept while speaking on the phone, he cut her finger with a knife and threatened again to kill her.  (Tr. at 200-01).  The next time the phone rang, Mr. Jodhan ran upstairs to answer it, and N.S. ran to a nearby school to seek help.  (Tr. at 202, 205).

Police and emergency services arrived at the school approximately half an hour later and took N.S. to the hospital. (Tr. at 206).  The doctor who examined her at Jacobi Hospital observed lacerations near N.S.'s vagina, anal fissures, and tenderness in her perirectal area.  (Tr. at 377-82).  She also observed tenderness and swelling on N.S.'s face, neck, arms, and stomach, and a laceration on her finger requiring stitches.  (Tr. at 383-87).  While these findings did not rule out the possibility of consensual sex, they were "more consistent with forced penetration."  (Tr. at 395, 397).  Testing matched semen found on N.S.'s body with Mr. Jodhan's DNA profile.  (Tr. at 526-27).

N.S. testified that one month later, on October 21, 2002, Mr.

Jodhan showed up at her house again with a knife. (Tr. at 208-09, 212). This time, she claimed, he threatened to kill her unless she accompanied him. (Tr. at 209, 212). He tied her hands, then packed her clothes, wrote a note to her aunt, and forced her into his car. (Tr. at 214-18, 221-25, 734). He proceeded to drive south with N.S. in the car. On the morning of October 22, 2003, Mr. Jodhan was arrested in Georgia after N.S. telephoned her family for help. (Tr. at 130, 232, 237-41).

Mr. Jodhan also testified at trial. He denied having raped, assaulted, or kidnapped N.S. He stated that he lived with N.S. at her aunt's house and paid rent to her aunt. (Tr. at 691, 694-95). He testified that on September 19, 2002, he and N.S. had consensual vaginal and anal intercourse. (Tr. at 712, 837-39). That evening, he returned to the house after work and found N.S. talking with a man named Joseph. (Tr. 714-15). Mr. Jodhan and Joseph exchanged some words and then got into a fight. (Tr. at 715). Mr. Jodhan testified that N.S. got hit and cut her left thumb on a piece of his jewelry while attempting to break up the fight. (Tr. at 716, 841-42). He stated that he also sustained a gash to his arm during the fight, at which point he ran out of the house. (Tr. at 717-19, 729).

Mr. Jodhan testified that one month later, when he was staying with his cousin in the Bronx, N.S. called him and invited him over to her house. (Tr. at 731-32). There, he claimed, the two of them

4

made plans to move to Florida.  (Tr. at 734).  They were on their way there when police took him into custody in Georgia.  (Tr. at 742).

On May 9, 2003, the jury found Mr. Jodhan guilty of rape, sodomy, and assault in connection with the events of September 18, 2003.  (Tr. at 1093, 1105).  The jury acquitted him of the kidnaping charges in connection with the events of October 21-22, 2002.  (Tr. at 1093).  On June 2, 2003, the petitioner was sentenced to concurrent terms of imprisonment of 20 years each for rape and sodomy, and five years for assault.  (Affidavit of Lawrence H. Cunningham dated Dec. 17, 2007 ("Cunningham Aff."), ¶ 4).

### 1.   Cross-Examination of the Defendant

During Mr. Jodhan's cross-examination, the prosecutor asked a number of questions that prompted defense counsel to object.  Each of these objections was eventually sustained or otherwise addressed by an instruction from the court.  For example, after Mr. Jodhan had testified that he pushed his broken car back and forth across the street outside N.S.'s house to avoid parking tickets, the prosecutor responded, "[Y]ou must be very strong because on July 24th, your car . . . was ticketed . . . in Queens; isn't that correct?"  (Tr. at 768).  Defense counsel objected and the judge sustained the objection. Other statements to which the defense objected included: "Two blocks.  So Mapquest.com would be wrong in

saying that it's four blocks away." (Tr. at 771); "You seem to hesitate.  Do you think your girlfriend is not pretty?" (Tr. at 781); "You were mixing up August and May? . . . . So.  Now that we have resolved May and August-" (Tr. at 795); "[Y]our testimony to this jury that there was going to be a basement made there is just part of your continuing fantasy about your relationship with [N.S.]; isn't that true?" (Tr. at 798); "[Y]ou have listened to the testimony of all the witnesses in this case, correct? . . . You are the last witness to testify in this case, correct?" (Tr. at 820); "You wear a lady's ring with hearts on it?" (Tr. at 853); "[Is it] just a coincidence that [N.S.] had a peacock ring stolen from her . . . . Do you know what that word means?" (Tr. at 850); and "You say that this big huge gash on your arm took one week to heal? . . .  That's funny, I have a blister on my foot that --" (Tr. at 896).  Over the course of the cross-examination, the court sustained about two dozen objections to the prosecutor's questions.

>    2.   <u>Summation</u>

At one point in the prosecutor's closing argument, she made reference to a comment in the defense's summation about a scar that Mr. Jodhan claimed he got as a result of the altercation with Joseph.  On cross-examination, the prosecutor had asked Mr. Jodhan whether he had had the scar since childhood.  (Tr. at 830).  Mr. Jodhan denied this assertion.  (Tr. at 830).  On summation, the prosecutor argued:

> [Defense counsel] suggested to you in his closing remarks this morning that the People could have called or should have called [N.S.] back to the stand about the scar. Well, ladies and gentleman, ask yourself. In about the 40 thousand questions that [defense counsel] asked [N.S.], did he ever ask her about the scar on his arm? No. Because her answer would have been he always had it there.

(Tr. at 1031). Defense counsel objected to this statement, and the court sustained the objection, instructing the prosecutor "not to speculate." (Tr. at 1031). Defense counsel did not request any further relief.

Later in the closing argument, the prosecutor made the following comment regarding the medical evidence presented in the case:

> I don't know that I've ever said so strongly on another summation that this medical evidence taken together, there is no reasonable view of it that would lead you to the conclusion that that was just merely the consequence of consensual sex. Vaginal tearing and anal tearing doesn't happen when two people are making love.

(Tr. at 1032). Defense counsel did not object to this statement.

### 3. Modified Allen Charge

Jury deliberations in the petitioner's case commenced on May 7, 2003. After two days, the jury notified the trial judge that it could not agree as to the rape charge. (Tr. at 1090-92). The court therefore took a partial verdict on all other charges and sent the jury back to resume deliberations on the rape charge. (Tr. at 1092-93, 1096-98). In doing so, the trial judge gave the following instruction:

> If people have strong convictions, you have to stay with
> these convictions.  But . . . [i]f you are unable to
> reach a verdict on the fifth count, this case will have
> to be tried over again not as to counts you reached a
> verdict on but as to that count.  So obviously, in the
> interest of judicial economy, it would be good to reach
> a verdict on the first count.  If you are unable to reach
> a verdict on that count, we are going to have to repanel
> another jury composed of individuals just like yourselves
> from all the walks of life.  We are going to have to
> retry the case as to that count and that jury will be
> asked to reach a verdict.  You know, if they can reach a
> verdict.  It's possible you can reach a verdict.  If you
> are still talking, I ask you to keep talking and let me
> know where you are.

(Tr. at 1097-98).  Defense counsel objected to the charge on

grounds that, in contravention of federal constitutional law, it

placed too much emphasis on reaching a verdict.  (Tr. at 1098-99).

Later in the afternoon, when the jury asked to hear the charge for

rape once more, the court reiterated:

> [T]here is nothing that compels you to reach a verdict.
> Of course, all things being equal, we would prefer to
> have a verdict.  So I don't expect anyone to violate
> their individual conscience or beliefs in order to get a
> verdict.  But if you can reach a verdict, we would like
> it.

(Tr. at 1101-02).  Shortly thereafter, the jury found Mr. Jodhan

guilty of rape.  (Tr. at 1105).

    B.  Subsequent History

    On May 16, 2006, the petitioner appealed his conviction to the

Appellate Division, First Department, arguing that (1) the

prosecutor engaged in gross misconduct on cross-examination and on

summation by repeatedly demeaning Mr. Jodhan, referring to matters

not in evidence, and improperly vouching for the prosecution's

case; (2) the trial court's modified <u>Allen</u> charge was unbalanced and coercive;[5] and (3) the sentence was excessive. (Brief for Defendant-Appellant ("Pet. App. Br."), attached as Exh. 1 to Cunningham Aff.). The Appellate Division affirmed the conviction on February 27, 2007. <u>People v. Jodhan</u>, 37 A.D.3d 376, 831 N.Y.S.2d 53 (1st Dep't 2007). The court found that the petitioner's claim regarding prosecutorial misconduct was unpreserved because counsel did not request any further relief after his objections were sustained and, in any event, the comments "played no role in the jury's verdict." <u>Id.</u> at 377, 831 N.Y.S.2d at 54. It did note, however, that the prosecutor's questions were unduly argumentative and her comments on summation "were manifestly improper." <u>Id.</u> at 377, 831 N.Y.S.2d at 54. With respect to the petitioner's <u>Allen</u> charge claim, the Appellate Division noted that "any arguable imbalance was cured" by the court's supplemental instruction. <u>Id.</u> at 377, 831 N.Y.S.2d at 54 (internal citation omitted). Finally, the Appellate Division held that the petitioner's sentence was excessive and modified his sentence "in the interest of justice" for the rape and sodomy charges to 15 years each. <u>Id.</u> at 376-77, 831 N.Y.S.2d at 53. Thereafter, the New York State Court of Appeals denied the petitioner's application

---

[5] An <u>Allen</u> charge is a supplemental charge made pursuant to <u>Allen v. United States</u>, 164 U.S. 492 (1896), that asks members of a deadlocked jury to consider the views of other jurors and attempt to reach a verdict. Courts have given modified <u>Allen</u> charges to encourage a deadlocked jury to continue deliberating.

for leave to appeal.  <u>People v. Jodhan</u>, 9 N.Y.3d 845, 840 N.Y.S.2d 772 (2007).  Mr. Jodhan filed the instant petition on August 21, 2007.

<u>Discussion</u>[6]

A.  <u>Prosecutorial Misconduct</u>

The petitioner claims that he was deprived of his right to a fair trial when the prosecutor engaged in a pattern of misconduct on cross-examination and summation.  Specifically, he asserts that the prosecutor asked questions on cross-examination that were not intended to elicit testimony from Mr. Jodhan, but to denigrate him and argue the case.  (Petition, ¶ 13).  In addition, he objects to

---

[6] Prior to passage of the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), factual findings made by a state court after an evidentiary hearing were presumed correct in a federal habeas proceeding, but federal courts were not required to defer to state court determinations of law and of mixed questions of law and fact.  <u>See</u> <u>Thompson v. Keohane</u>, 516 U.S. 99, 107-12 (1995); <u>Brown v. Artuz</u>, 283 F.3d 492, 497 (2d Cir. 2002).  Under the AEDPA, however, a writ of habeas corpus may not issue "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

The AEDPA standard applies to this case since Mr. Jodhan filed his petition after the Act's effective date.  <u>See</u> <u>Brown</u>, 283 F.3d at 498 n.2.  However, where, as here, the petitioner's claims fail under the less deferential pre-AEDPA standard, there is no need to conduct the AEDPA's more intricate analysis.  <u>Cf.</u> <u>Kruelski v. Connecticut Superior Court for the Judicial District of Danbury</u>, 316 F.3d 103, 106 (2d Cir. 2003) (suggesting, in post-AEDPA cases, that habeas courts should assess first whether state court's ruling was erroneous under the "correct interpretation" of federal law at issue, then whether the ruling was unreasonable).

the prosecutor's comments on summation that referred to matters not in evidence and improperly vouched for the strength of the prosecution's case. (Petition, ¶ 13). The respondent argues that this claim is procedurally barred and, in any event, without merit because any misconduct did not affect the jury's verdict.

### 1. Procedural Default

A procedural default generally bars a federal court from reviewing the merits of a habeas claim. Wainwright v. Sykes, 433 U.S. 72 (1977). Federal habeas review is prohibited if a state court rests its judgment on a state law ground that is "independent of the federal question and adequate to support the judgment." Cotto v. Herbert, 331 F.3d 217, 238 (2d Cir. 2003) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)); accord Jones v. Stinson, 229 F.3d 112, 117 (2d Cir. 2000). A state procedural bar qualifies as an "independent and adequate" state law ground where "'the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.'" Levine v. Commissioner of Correctional Services, 44 F.3d 121, 126 (2d Cir. 1995) (quoting Harris v. Reed, 489 U.S. 255, 262 (1989)). A state procedural rule will be adequate to preclude habeas review if it is "firmly established and regularly followed," unless the state rule is "exorbitant." Lee v. Kemna, 534 U.S. 362, 376 (2002) (quoting James v. Kentucky, 466 U.S. 341, 348 (1984)).

Under New York law, in order to preserve a claim of

prosecutorial misconduct for appellate review, defense counsel is required to make a specific objection at trial, and, if his objections are sustained, to seek further relief.  See People v. Medina, 53 N.Y.2d 951, 953, 441 N.Y.S.2d 442, 442-43 (1981) (claim regarding prosecutor's remarks on summation unpreserved where trial court sustained defendant's objection and defendant "did not request any curative instruction or move for a mistrial on [that] basis"); People v. Tardbania, 72 N.Y.2d 852, 853, 532 N.Y.S.2d 354, 354 (1988) (finding claim not preserved "where the defendant objected, the objection was sustained and adequate curative instructions were given"); People v. Rogers, 281 A.D.2d 240, 240, 721 N.Y.S.2d 533, 533 (1st Dep't 2001) ("By failing to object, by making general objections, or by failing to request any further relief after objections were sustained, defendant failed to . . . preserve her contentions.");  CPL § 470.05(2).

New York's preservation doctrine is both firmly established and regularly followed.  Garvey v. Duncan, 485 F.3d 709, 715-16 (2d Cir. 2007); Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir. 1999).  In Garvey, the Second Circuit identified three factors for evaluating the application of a state procedural bar: (1) "whether perfect compliance with the state rule would have changed the outcome of the trial court's decision;" (2) "[w]hether state case law indicate[s] that compliance with the rule was required in the specific circumstances;" and (3) whether the petitioner

"substantially complied" with the rule given the "realities of the trial." 485 F.3d at 719-20 (quoting Lee v. Kemna, 534 U.S. at 381-85); accord Cotto, 331 F.3d at 240.  The requirement that the defendant seek further relief after an objection is sustained in order to preserve his claim for appeal has consistently been found to qualify as an independent and adequate state law ground.  See, e.g., O'Henry v. Superintendent, Watertown Correctional Facility, No. 05-CV-4752, 2007 WL 2126094, at *6 (E.D.N.Y. July 24, 2007) ("Where a defendant's objection is sustained, but the defendant fails to request additional relief, [New York's] contemporaneous objection rule bars review."); Madore v. Beaver, 368 F. Supp. 2d 219, 223 (W.D.N.Y. 2005) ("[Defendant] was required to raise his challenges to the prosecutor's summation by specifically objecting to the allegedly improper remarks, and, if his objections were sustained, requesting further relief from the trial court."); Simpson v. Portuondo, No. 01 Civ. 1379, 2001 WL 830946, at *11 & n.38 (S.D.N.Y. July 12, 2001) (same).

In Mr. Jodhan's case, the Appellate Division clearly and expressly stated that its judgment rested on this procedural ground.  Jodhan, 37 A.D.3d at 377, 831 N.Y.S.2d at 54 ("Defendant's [prosecutorial misconduct claim] is unpreserved and we decline to review it in the interest of justice.  Defendant did not request any further relief after the court sustained his objections or took

other curative actions.")[7]  This application of the procedural bar
was reasonable under the factors identified in Garvey.  First,
although it is hard to say whether the court would have taken any
further action to cure the error, a follow-up request from counsel
would have at least enabled the court to consider possible
remedies.  Second, as noted above, New York courts have
consistently demanded compliance with the preservation doctrine in
these exact circumstances.  And, finally, with respect to the
question of "substantial compliance," the record shows that defense
counsel did not appraise the court at all that it believed further
curative instructions or declaration of a mistrial might be
warranted.   A federal court may review a claim, notwithstanding
the petitioner's default, if he "can demonstrate cause for the
default and actual prejudice as a result of the alleged violation
of federal law."   Coleman, 501 U.S. at 750; see also Levine, 44
F.3d at 126; Grey v. Hoke, 933 F.2d 117, 121 (2d Cir. 1991).  A
petitioner may establish cause by pointing to "some objective
factor external to the defense [that] impeded counsel's efforts to

---

[7] Although the Appellate Division discussed the merits of the
petitioner's claim in an alternative holding, "federal habeas
review is foreclosed when a state court has expressly relied on a
procedural default as an independent and adequate state ground,
even where the state court has also ruled in the alternative on the
merits of the federal claim."  Glenn v. Bartlett, 98 F.3d 721, 724
(2d Cir. 1996) (quoting Velasquez v. Leonardo, 898 F.2d 7, 9 (2d
Cir. 1990); see also Harris v. Reed, 489 U.S. 255, 264 n.10 (1989)
("[A] state court need not fear reaching the merits of a federal
claim in an alternative holding."); Garcia, 188 F.3d at 71.

14

comply with the State's procedural rule." <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986); <u>accord</u> <u>Coleman</u>, 501 U.S. at 753. A petitioner suffers actual prejudice if the outcome of the case would likely have been different had the alleged constitutional violation not occurred. <u>See</u> <u>Reed v. Ross</u>, 468 U.S. 1, 12 (1984); <u>Trottie v. Mantello</u>, No. 98 Civ. 5581, 1999 WL 187202, at *4 (S.D.N.Y. April 6, 1999). Alternatively, even if the petitioner is unable to show cause and prejudice, the court may consider the claim if he can demonstrate that failure to do so will result in a "fundamental miscarriage of justice." <u>Coleman</u>, 501 U.S. at 750.

The petitioner has not provided any explanation for trial counsel's failure to preserve the claim. Thus, he is unable to show cause for his default. Nor has the petitioner made a showing that his is the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Murray</u>, 477 U.S. at 496 (describing standard for a fundamental miscarriage of justice). This Court, therefore, may not review the claim.

       2.  <u>Merits</u>

Even if the Court were to reach the merits of Mr. Jodhan's claim, no relief would be warranted. As a general rule, "prosecutorial misconduct cannot give rise to a constitutional claim unless the prosecutor's acts constitute 'egregious misconduct.'" <u>Miranda v. Bennett</u>, 322 F.3d 171, 180 (2d Cir. 2003)

(quoting <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 647 (1974)). Furthermore, any misconduct "must be assessed in the context of the entire trial." <u>Id.</u> at 180. The relevant inquiry, therefore, is not whether the prosecutor's improper questions and remarks "were undesirable or even universally condemned," but whether they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." <u>Darden v. Wainwright</u>, 477 U.S. 168, 180-81 (1986) (internal quotation marks and citations omitted); <u>see also</u> <u>Murray v. Greene</u>, No. 06 Civ. 3677, 2006 WL 3751294, at *17 n.36 (S.D.N.Y. Dec. 21, 2006) (describing high bar in prosecutorial misconduct cases).

a.  <u>Cross-Examination</u>

The petitioner contends that the prosecutor's questioning was improper for two reasons. First, Mr. Jodhan argues that the prosecutor improperly implied that the petitioner tailored his testimony to the prosecution's case. (Pet. App. Br. at 27). Next, the petitioner claims that the prosecutor made numerous sarcastic or inflammatory comments on cross-examination that were meant to belittle him and to argue her case rather than ask a legitimate question. In doing so, he argues, the prosecutor exceeded the bounds of permissible advocacy. (Pet. App. Br. at 28-32).

During cross-examination of the petitioner, the prosecutor asked, "[Y]ou have listened to the testimony of all the witnesses in this case, correct?" (Tr. at 820). The court sustained defense

16

counsel's objection to this question and instructed the prosecutor to "[a]sk a question." (Tr. at 820). The prosecutor continued, "You are the last witness to testify in this case, correct?" (Tr. at 820). In response to a second objection by counsel, the court asked the prosecutor to step up to the bench, but the prosecutor agreed to move on. (Tr. at 820-21). The Supreme Court has held that it does not violate a criminal defendant's right to be present at trial, confront witnesses, or testify on his own behalf if a prosecutor draws attention to the fact that these rights grant the defendant a "unique opportunity to tailor his testimony." Portuondo v. Agard, 529 U.S. 61, 73 (2000); see also Valdez v. Mazzuca, No. 00-CV-4961, 2002 WL 1364089, at *3 (E.D.N.Y. June 21, 2002) (rejecting claim of misconduct where prosecutor's cross-examination was "designed to suggest that petitioner had the advantage of hearing the government's witnesses and tailored his testimony accordingly"). Thus, the petitioner's contention is without merit.

The petitioner's claim that the prosecutor asked demeaning and argumentative questions on cross-examination also fails. Though the prosecutor's conduct was improper, the petitioner has not shown that the questions, taken together with the court's responses, resulted in unfairness. In almost every case, the sustaining of an objection was sufficient to induce the prosecutor to move on. In other cases, the court re-phrased the question or identified the

17

objectionable aspects of the question in the presence of the jury. The jury also had the benefit of standard instructions, including the instruction that "[q]uestions in and of themselves are not evidence." (Tr. at 5). Moreover, the trial court instructed the jury to be wary "of questions that are improper because they sort of suggest that they are more like testimony on the part of the attorney." (Tr. at 6). While these instructions must be "viewed against the background of the case as a whole," United States v. Semensohn, 421 F.2d 1206, 1208 (2d Cir. 1970), the jury is generally presumed to have followed them. See Richardson v. Marsh, 481 U.S. 200, 206 (1987); cf. Rustici v. Philips, 497 F. Supp. 2d 452, 478 (E.D.N.Y. 2007) (jury presumed to have followed curative instruction); Pretlow v. Lord, No. 03 CV 2547, 2005 WL 1073609, at *3 (E.D.N.Y. April 29, 2005) ("[E]rrors were resolved at trial when the court sustained [d]efendant's objections . . . instructed the jury not to speculate . . . and admonished the prosecutor."). Finally, the evidence of the petitioner's guilt in this case was strong; in particular, N.S.'s version of the events of September 19, 2002 was corroborated by considerable physical evidence. For all these reasons, the petitioner is unable to demonstrate that he did not receive a fair trial.

b.    Summation

The petitioner next asserts that the prosecutor made two improper comments during summation. First, the prosecutor referred

to matters not in evidence.  She asked the jury to consider why the defense did not ask N.S. about the scar Mr. Jodhan claimed to have gotten from fighting with Joseph and surmised, "[b]ecause her answer would have been he always had it there."  (Tr. at 1031). Second, she improperly vouched for the strength of the case by comparing it to other cases she had tried.  (Tr. at 1032).

To prevail on a claim that a prosecutor's remarks on summation resulted in constitutional error, the petitioner must show "substantial prejudice." United States v. Carr, 424 F.3d 213, 227 (2d Cir. 2005).  A court assessing such a claim must consider "(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the certainty of conviction absent the improper statements." United States v. Thomas, 377 F.3d 232, 245 (2d Cir. 2004); Floyd v. Meachum, 907 F.2d 347, 355 (2d Cir. 1990). In addition, courts may consider whether the evidence was manipulated or misstated, whether the remark implicated other constitutional rights of the accused, and whether the remark was "invited by or [] responsive to the opening summation of the defense." Darden, 477 U.S. at 182; see also United States v. Feliciano, 223 F.3d 102, 123 (2d Cir. 2000) ("[T]he government is allowed to respond to an argument that impugns its integrity or the integrity of its case . . . with rebutting language suitable to the occasion.") (quoting United States v. Thai, 29 F.3d 785, 807 (2d Cir. 1994)).

The respondent argues that the prosecutor's first comment about Mr. Jodhan's scar was a response to defense counsel's attack on the integrity of the prosecution's case. (Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus ("Resp. Memo.") at 15). During closing argument for the defense, counsel had started to suggest that if it was indeed true that Mr. Jodhan had the scar since childhood, the prosecution would have called N.S. back to the stand to testify to that fact. (Tr. at 972). The court cut off this line of argument upon an objection by the prosecution. (Tr. at 972). While the prosecutor was entitled to respond, she crossed the line when she supplied the jury with her own answer to a question that had not been posed to the witness by either side, claiming "[N.S.]'s answer would have been he always had [the scar] there." (Tr. at 1031); see United States v. Perez, 144 F.3d 204, 210 (2d Cir.1997) (noting that it is generally improper to imply the existence of extraneous proof). The prosecutor's comment expressing her own view as to the strength of the medical evidence was also improper. See United States v. Rivera, 22 F.3d 430, 437-38 (2d Cir. 1994) ("We have repeatedly warned prosecutors that they should avoid interjecting their personal beliefs into their summations or vouching for their witnesses' truthfulness.") (internal quotation marks, citations, and alterations omitted); see also United States v. Young, 470 U.S. 1, 18-19 (1985) (discussing impropriety of prosecutor's "expressing

20

personal opinion concerning the guilt of the accused").

However, the impropriety of these comments must be weighed against the trial court's instruction immediately preceding closing arguments that "what attorneys say is not evidence" and that "[jurors] need not adopt a view of either attorney as long as [they] concentrate on the evidence in the case or lack of evidence in the case." (Tr. at 911-12). See Darden, 477 U.S. at 182 (no due process violation where "trial court instructed jurors that . . . arguments of counsel were not evidence"). Furthermore, as the Appellate Division found, the evidence of the petitioner's guilt was substantial, and the jury could reasonably have reached the same verdict even in the absence of these two comments. See Barclay v. Spitzer, Nos. 02-CV-02184 & 03-MISC-0066, 2003 WL 24053776, *14 (E.D.N.Y. Sept. 17, 2003) (petitioner must show that "prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict."). Thus, the petitioner is unable to show a constitutional violation and his claim must be denied.

B.    Modified Allen Charge

The petitioner claims that the trial court's charge to the members of the jury when they became deadlocked on the rape charge placed excessive emphasis on reaching a verdict and inappropriately shamed them by suggesting that another jury would have to be impaneled to carry out the duties they had failed to complete.

(Pet. App. Br. at 43-45).

The Supreme Court has long sanctioned a trial judge's supplemental instructions to a deadlocked jury to continue deliberations and "decide the case if the jurors could conscientiously do so." See Allen, 164 U.S. at 501. However, those instructions may not be overly coercive. See Brasfield v. United States, 272 U.S. 448, 450 (1926). In determining whether supplemental instructions are too forceful, a court must evaluate the charge "in its context and under all the circumstances" of each case. Lowenfield v. Phelps, 484 U.S. 231, 239 (1987) (quoting Jenkins v. United States, 380 U.S. 445, 446 (1965)). Factors to be considered include a defense attorney's failure to object to the supplemental instructions and the amount of time that elapsed between the Allen charge and return of a verdict. See Lowenfield, 484 U.S. at 240; Spears v. Greiner, 459 F.3d 200, 206-07 (2d Cir. 2006). Furthermore, where a trial court asks jurors to consider the views of other jurors or to attempt to persuade each other, it must supplement that command with cautionary language reminding jurors not to relinquish their conscientiously held beliefs. See Spears, 459 F.3d at 205-06 (citing Smalls v. Batista, 191 F.3d 272, 278 (2d Cir. 1999)). On the other hand, language that urges a jury to attempt to reach a verdict "if that might be possible" is not coercive. Spears, 459 F.3d at 206. Nor, generally, is language that mentions the time and effort expended by the parties and the

22

necessity of retrial before another jury.  <u>See</u> <u>United States v.</u> <u>Henry</u>, 325 F.3d 93, 107-08 (2d Cir. 2003) (holding supplemental jury charge emphasizing "considerable expense and money and human effort" involved and necessity of retrial before another jury not coercive); <u>United States v. Corcione</u>, 592 F.2d 111, 117 & n.5 (2d Cir. 1979) (same); <u>United States v. Rao</u>, 394 F.2d 354, 355 (2d Cir. 1968).

In Mr. Jodhan's case, after learning that the jury could not reach a verdict on the rape charge, the trial court urged the jury to keep its deliberations alive by observing that "it would be good to reach a verdict" on that count, "in the interest of judicial economy."  (Tr. at 1097).  It then alluded to the possibility that another jury would have to be impaneled and sit through another trial.  (Tr. at 1097-98).  As discussed above, such language has generally been held to be permissible.  However, the trial court further stated, "[I]f they can reach a verdict[,] [i]t's possible you can reach a verdict."  (Tr. at 1097-98).  This last statement could be seen as inappropriately implied that the jury would be failing in its duty if it ultimately could not reach a verdict.

Nevertheless, the trial court opened its supplemental charge with an assurance that "[i]f people have strong convictions, [they should] stay with these convictions."  (Tr. at 1097).  Furthermore, a little while later, when the jury asked to hear the charge for rape once more, the court emphasized that while it would prefer a

verdict if possible, "[n]othing [] compels you to reach a verdict." (Tr. at 1101).  The court continued, "I don't expect anyone to violate their individual conscience or beliefs in order to get a verdict."  (Tr. at 1101-02).  This sort of "cautionary language" admonishing jurors not to surrender their views can negate coercion.  See United States v. Ruggiero, 928 F.2d 1289, 1299 (2d Cir. 1991).  Defense counsel did not take any specific exception to this cautionary language or request any further instructions.[8]  The jury did return a verdict on rape two hours after it received the court's modified Allen charge, but this was enough time for the jurors to ask to be charged on the rape count yet again.  In sum, the court's modified Allen charge, when taken in context, did not prejudice the petitioner to such an extent that he was denied the right to a fair trial.  Accordingly, his claim must be rejected.

Conclusion

  For the reasons set forth above, I recommend that Mr. Jodhan's

---

  [8] The respondent argues that, by failing to object to the curative instructions delivered later in the afternoon, Mr. Jodhan waived any claim that the initial modified Allen charge was deficient.  (Resp. Memo. at 23).  No authority is cited for this proposition.  In any event, because the Appellate Division ruled on the claim on appeal, Jodhan, 37 A.D.3d at 377, 831 N.Y.S.2d at 54, and because the claim was subsequently presented to the Court of Appeals, this Court may evaluate it on the merits.  See Wainwright v. Witt, 469 U.S. 412, 431 n. 11 (1985) (while "counsel's failure to speak in a situation later claimed to . . . constitute constitutional error" may be probative as to the merits, there is no suggestion that the defendant waived his claim "where the state courts do not rely on independent state grounds for disposing of [it]").

petition for a writ of habeas corpus be denied.  Pursuant to 28

U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal

Rules of Civil Procedure, the parties shall have ten (10) days from

this date to file written objections to this Report and

Recommendation.  Such objections shall be filed with the Clerk of

the Court, with extra copies delivered to the chambers of the

Honorable Richard M. Berman, Room 650, and to the chambers of the

undersigned, Room 1960, 500 Pearl Street, New York, New York 10007.

Failure to file timely objections will preclude appellate review.


Respectfully submitted,


James C. Francis IV

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       March 28, 2008

Copies mailed this date:

Narendra Jodhan
03-A-3207
Green Haven Correctional Facility
P.O. Box 4000
Stormville, New York 12582

Stanley R. Kaplan, Esq.
Lawrence H. Cunningham, Esq.
Assistant District Attorneys
198 East 161st Street
Bronx, New York 10451

25